**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Grisell Alves, | CV 11-00509-PHX-FJM |
| Plaintiff, | **ORDER** |
| vs. | |
| Emerald Correctional Management LLC, | |
| Defendant. | |

We have before us defendant's motion for summary judgment (doc. 46) and separate statement of facts ("DSOF") (doc. 47), plaintiff's response (doc. 51), plaintiff's response to defendant's statement of facts ("PSOF") and statement of additional facts ("PSSOF") (doc. 52), and defendant's reply (doc. 58).  We also have before us plaintiff's motion to supplement her response to the motion for summary judgment (doc. 59) and defendant's response (doc. 60).  Plaintiff did not reply in support of her motion to supplement, and the time for replying has expired.

**I**

On a motion for summary judgment we accept undisputed facts as true and draw all reasonable inferences in the non-moving party's favor. See Stegall v. Citadel Broad. Co., 350 F.3d 1061, 1065 (9th Cir. 2003).

1      Plaintiff is a female nurse who began working at the San Luis Detention Facility in
2  March 2009.  Defendant, a company that builds and manages correctional facilities, took
3  over management of the San Luis Detention Facility in August 2009.

4      Plaintiff was hired by defendant on August 15, 2009 to work in the San Luis medical
5  department as a Licensed Practical Nurse ("LPN").  While employed as an LPN, plaintiff
6  supervised Emergency Medical Technician Mark Ochoa and worked with LPN Alberto
7  Acosta, whom she trained.  She also worked with Correctional Officer Rigoberto Urias.
8  Neither Acosta, Ochoa, nor Urias could demote or fire plaintiff, set her hours, set her pay
9  rate, discipline her, or conduct performance reviews.  Plaintiff reported to Diane Duenas, the
10 Medical Department Head.

11     Upon hire, plaintiff received a copy of defendant's employee handbook and
12 acknowledged that she read and understood its policies and procedures.  The handbook
13 contains a section titled "Sexual Harassment Policy," DSOF, ex. 8 at 7-12, and outlines a
14 procedure for reporting harassment.  An employee who believes that he or she has been
15 subjected to harassment is instructed to "promptly report the incident, verbal [sic] or in
16 writing, to the Ethics and Compliance Officer."  DSOF, ex. 8 at 9.  Alternatively, the
17 employee should report the incident to "[t]he Human Resource Director at [] [defendant's]
18 corporate office."  DSOF, ex. 8 at 9.  The handbook expressly prohibits both sexual
19 harassment and retaliation for complaining about harassment, cautioning that any person who
20 engages in harassment or retaliates against another employee for reporting harassment faces
21 discipline up to termination of employment.

22     On September 3, 2010, Ochoa spoke with fellow nurse Suzanne Ross. He confided
23 that working with plaintiff was becoming unbearable, and that he was considering quitting.
24 Ross suggested that Ochoa speak with Duenas.  Ochoa ultimately met with Human
25 Resources ("HR") representative Ivy Sanchez and Duenas on September 8, 2010.  He
26 reported that his working relationship with plaintiff had been strained since December 2009.
27 Ochoa claimed that on September 5, 2010, plaintiff asked him for advice regarding a sexual
28 relationship she was having with a married co-worker.  Ochoa felt that this was

1  inappropriate.  He also indicated that he thought plaintiff was going to try and get Acosta in

2  trouble, because he told her that Acosta did not like her.[1]

3      Plaintiff met with Assistant Warden Robert Pease, Sanchez, and Duenas on September

4  8, 2010 to discuss concerns she had about Ochoa and Acosta's behavior.  Plaintiff indicated

5  that she learned on September 5, 2010 from Ochoa that comments had been made behind her

6  back.  She reported that Ochoa and Acosta had discussed the size of her breasts and joked

7  about her sexual partners.  She alleged that Acosta frequently asked Ochoa if he was sleeping

8  with her, leading other employees to stop speaking with her.  Defendant immediately

9  commenced an investigation into plaintiff's claims.  Assistant Warden Pease asked plaintiff

10  to submit a written statement of her allegations.  Plaintiff signed a summary of the allegations

11  made during the September 8th meeting on September 10, 2010.

12      Also on September 8, 2010, plaintiff was notified that her hours were going to be

13  changed.  Plaintiff complained to Assistant Warden Pease, and was notified by Duenas that

14  her schedule was going to remain the same.  Although the parties disagree as to whether

15  Duenas contacted plaintiff on September 8th or September 9th, it is undisputed that the

16  proposed change in hours never took effect.

17      Ross spoke with Duenas on September 9, 2010.  Ross reported that she personally

18  witnessed plaintiff touching, grabbing, and tickling Ochoa against his will, and heard

19  plaintiff make sexual comments about Ochoa, including making comments about his

20  "package" while rubbing herself around her groin.  Ross indicated that Ochoa was

21  considering resigning, and was embarrassed to report that he was being harassed by a

22  woman.  Ross stated that the problems between Ochoa and plaintiff had been happening for

23  some time.[2]

24

25  _____

26      [1] Plaintiff denies the allegations but does not dispute that the report was made.  PSOF
   ¶ 19.

27      [2] Although plaintiff denies that she touched Ochoa against his will or made

28  inappropriate comments, she does not dispute that the allegations were made.  PSOF ¶ 21.

On September 10, 2010, Assistant Warden Pease and Sanchez met with Ochoa to discuss plaintiff's allegations of sexual harassment. Ochoa admitted to using inappropriate language and making inappropriate comments. That same day, Pease and Sanchez met with Acosta to discuss plaintiff's allegations. Acosta admitted saying that plaintiff's shirt was too tight and admitted to asking Juan Cervantes, another correctional officer, whether he was dating plaintiff. Acosta also reported that plaintiff had made sexual comments regarding Urias and Cervantes. Acosta reported an incident between plaintiff and Urias that he personally witnessed. According to Acosta, he was in the medical office with plaintiff when Urias came in to get water from the water cooler. As Urias drank his water, plaintiff rubbed up against the front of Urias's body as she squeezed by the water cooler.[3]

Plaintiff, Ochoa, and Acosta were each placed on administrative leave without pay on September 10, 2010 pending a formal investigation. All three were instructed to avoid contact with staff. DSOF, exs. 22, 30, 31.

On September 14, 2010, Assistant Warden Pease and Sanchez met with Urias. Urias denied plaintiff's allegations of sexual harassment. He reported that plaintiff once grabbed him by his belt and the back of his head, kissed him, and rubbed against his groin. This allegation was corroborated by at least two witnesses. Urias also reported that despite his instructions to stop, plaintiff would approach him in the hallway and rub her buttocks against his groin.[4] Urias was placed on administrative leave without pay pending a formal investigation on September 15, 2010.

Assistant Warden Pease and Sanchez met with plaintiff on September 14, 2010 to discuss Ochoa and Urias's allegations of harassment. According to defendant, plaintiff admitted tickling Ochoa, rubbing up against Urias, and kissing Urias. DSOF ¶ 26. Plaintiff

---

[3] Plaintiff denies the allegations but does not dispute that the report was made. PSOF ¶ 22.

[4] Plaintiff denies that Urias and other witnesses told the truth. She does not dispute that Urias made the allegations, or that they were corroborated by other witnesses. PSOF ¶¶ 25, 28.

1   denies that she admitted tickling Ochoa and denies that she admitted rubbing up against Urias

2   in a sexual manner.  PSOF ¶ 26.  She denies that referring to the kiss with Urias as mutual

3   "was a confession that she welcomed or initiated the kiss."  PSOF ¶ 26.  That same day,

4   plaintiff submitted new claims against Acosta, Ochoa, and Urias, including allegations that

5   Acosta called her "grillo"[5] and "Griselda," and that Ochoa frequently used profanity.

6        Defendant completed its investigation into plaintiff's allegations on September 21,

7   2010.  It concluded that Acosta violated company policy concerning the use of inappropriate

8   language and that Urias violated company policy requiring prompt reporting of violations of

9   company policy.  Both Acosta and Urias were suspended without pay and ordered to re-

10  attend defendant's sexual harassment training course.  Defendant concluded that there was

11  probable cause to believe that Ochoa violated its sexual harassment policy, and terminated

12  his employment on September 22, 2010.

13       As a part of defendant's investigation into the complaints of inappropriate sexual

14  behavior by plaintiff, defendant interviewed more than fifteen employees.  Defendant

15  terminated plaintiff's employment on September 22, 2010, citing violations of the sexual

16  harassment policy.  A few days later, plaintiff sent a letter to HR Director Lesley Myers that

17  raised new allegations of harassment.  This included an allegation that Urias once simulated

18  sex on a chair in her presence in January 2010, and that in February 2010 Urias exposed

19  himself to her, then touched her pubic area and her breast.  See PSOF, ex. J.  Plaintiff does

20  not dispute that she had the opportunity to report this conduct at the time it occurred or

21  during defendant's investigation, but waited until after she had been fired.  Although

22  plaintiff's employment had already been terminated, defendant launched a second

23  investigation into plaintiff's new claims.  After completing its investigation, defendant

24  concluded that plaintiff's new allegations could not be corroborated.

25       In January 2011, an anonymous complaint was filed with the Arizona State Board of

26  Nursing against plaintiff, alleging that defendant fired her for engaging in unprofessional

27

28       [5] "Grillo" is the Spanish word for "cricket."  DSOF ¶ 37.

conduct and sexual intimidation.  <u>PSOF</u>, ex. N.

Plaintiff received a Notice of Right to Sue letter from the Equal Employment Opportunity Commission dated December 17, 2010.  She filed this action March 17, 2011 alleging retaliation and a sexually hostile work environment in violation of Title VII. Defendant moves for summary judgment on both counts.

II

Two days after summary judgment briefing closed, and almost one month after filing her response to the motion for summary judgment, plaintiff moved to supplement her response.  Plaintiff argues that an email to which "counsel's attention was recently drawn" rebuts defendant's allegations that plaintiff only raised allegations of sexual harassment after she was accused.  <u>Mot. to Supplement</u> at 2.  Plaintiff cites no authority to support her argument that we should permit supplementation after the close of briefing.  Realizing weeks after submitting her response that she neglected to include an email does not justify re-opening the record after briefing has closed.  Moreover, the email would not affect our resolution of the motion for summary judgment.  Plaintiff's motion to supplement her response is denied.

III

Title VII prohibits an employer from discriminating against an employee who opposes a practice proscribed by Title VII, or has "made a charge, testified, assisted, or participated" in a Title VII investigation, hearing, or proceeding. 42 U.S.C. § 2000e-3(a).  To successfully make out a *prima facie* case for retaliation, plaintiff must show that "(1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between her activity and the employment decision."  <u>Stegall</u>, 350 F.3d at 1065-66 (citation omitted).  If she is successful, the burden shifts to defendant to "articulate a legitimate, non-discriminatory reason for the adverse employment action."  <u>Id.</u> at 1066 (citation omitted).  If a reason is articulated, plaintiff bears the burden of showing that defendant's offered reason "was merely a pretext" for retaliation.  <u>Id.</u> (citation omitted). Plaintiff may show pretext either by offering direct evidence of retaliation, or indirect

1   evidence showing that defendant's explanation is unworthy of belief.  Id.

2          Plaintiff alleges that defendant retaliated against her for reporting sexual harassment
3   by (1) changing her schedule, (2) terminating her employment, and (3) submitting an
4   anonymous complaint to the Arizona Nursing Board.  Defendant argues that plaintiff has not
5   made out a *prima facie* case for retaliation because the nursing board complaint is not
6   attributable to defendant, the scheduling change was not a retaliatory act, and there is no
7   causal link between her report of harassment and her termination of employment.[6]

8          Plaintiff argues that the anonymous nursing board complaint "was probably made" by
9   Urias, "who probably received advice from coworkers," Response to MSJ at 2, because the
10  anonymous complaint was submitted forty-eight days after she submitted a complaint to the
11  Arizona Department of Public Safety regarding Urias.  Plaintiff offers no evidence to rebut
12  defendant's evidence showing that Urias denied submitting the complaint, and that the
13  Arizona Nursing Board confirmed that the complaint was filed anonymously.  DSOF ¶ 53.
14  Moreover, plaintiff presents no evidence to suggest that defendant directed Urias to submit
15  the complaint, or that defendant even knew of the complaint prior to being contacted by the
16  Arizona Nursing Board during its investigation.  Thus, even if Urias (who did not supervise
17  plaintiff) submitted the complaint, without any evidence to suggest that defendant either
18  condoned Urias' submission of the complaint or directed him to submit it as its agent,
19  plaintiff has not shown that defendant committed a retaliatory act by submitting the
20  complaint. See Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 587-88 (9th Cir. 1993) (although
21  "supervisory personnel and other agents" may be employers for purposes of Title VII,
22  liability cannot be imposed on individual employees); see also Swenson v. Potter, 271 F.3d
23  1184, 1191-92 (9th Cir. 2001) ("Title VII liability is direct, not derivative: An employer is
24  responsible for its own actions or omissions, not for the co-worker's harassing conduct.").

25  _____

26          [6] Defendant does not argue that plaintiff failed to show participation in a protected
27  activity.  Indeed, it is clear that she engaged in protected activity by reporting sexual
    harassment to her employer.  See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1064
28  (9th Cir. 2002) (complaint of sexual harassment made to an employer is a protected activity).

1    By analogy, defendant cannot be held liable for a retaliatory act of an employee that it did

2    not direct, ratify, or even know about.  Accordingly, the anonymous nursing board complaint

3    fails to support plaintiff's retaliation claim.

4           To establish an adverse employment action, plaintiff must show that "a reasonable

5    employee would have found the challenged action materially adverse," meaning that the

6    action might have "dissuaded a reasonable worker from making or supporting a charge of

7    discrimination."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S. Ct.

8    2405, 2415 (2006) (internal quotation marks and citation omitted).  Not all retaliatory acts

9    are protected under Title VII.  Only "retaliation that produces an injury or harm" is

10   actionable.  See id. at 67, 126 S. Ct. at 2414.  It is undisputed that the schedule change

11   announced on September 8, 2010 never actually went into effect.  After plaintiff complained

12   to Assistant Warden Pease, she was notified that her schedule would remain the same.  And

13   plaintiff has not shown that the schedule change produced injury or harm.[7]  Under these

14   circumstances, the schedule change was not an adverse employment action.  See Brooks v.

15   City of San Mateo, 229 F.3d 917, 930 (9th Cir. 2000) (rescheduling plaintiff to undesirable

16   shift and denying vacation request not actionable; after plaintiff complained, defendant

17   "accommodated her preferences by allowing her to switch shifts and vacation dates").  By

18   contrast, termination of employment is obviously an action that a reasonable employee would

19   find materially adverse.  An employee almost certainly would be discouraged from reporting

20   sexual harassment if the price of doing so is losing her job.  Defendant does not argue

21   otherwise.

22          To complete her *prima facie* case for retaliation relating to the termination of her

23   employment, plaintiff must show a causal link between the protected activity and the

24   employment action.  Defendant argues that there is no causal link between plaintiff's

25   _____

26          [7] Although plaintiff initially testified that she worked different hours on September
     9, 2010, because she was asked to come into work at 7:15pm rather than 7:00pm, she
27   conceded that she was paid for working 7:00pm to 8:30am on September 9th.  Alves Dep.
28   200:13-25; 204:2-4 (DSOF, ex. 6).

complaints and its decision to terminate her employment, because plaintiff waited until after she was fired to report many allegations, and only submitted the allegations she did make after she had been accused of harassment.  It is clear that defendant could not have fired plaintiff on September 22, 2010 in retaliation for allegations made after that date.  It is not clear, however, whether plaintiff knew of the allegations against her prior to reporting her own allegations.  A reasonable jury could conclude that plaintiff, who met with defendant on September 8, 2010 but was not placed on administrative leave until September 10, 2010, reported harassment before she was aware of the charges against her.  But even if plaintiff did not raise her allegations of harassment until after she knew she had been accused, this does not foreclose the existence of a causal link between her report of harassment on September 8th and defendant's decision to terminate her employment on September 22nd. She could have reported harassment with an ulterior motive, and still have been fired in retaliation for simply making the report.

Close proximity in timing alone can satisfy plaintiff's burden to establish causation. Passantino v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493, 507 (9th Cir. 2000); compare Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065 (9th Cir. 2002) (eighteen month interval "too long, by itself, to give rise to an inference of causation"), with Miller v. Fairchild Indus., Inc., 885 F.2d 498, 505 (9th Cir. 1989) (causation inferred when adverse actions happened forty-two and fifty-nine days after protected activity).  Here, just two weeks elapsed between plaintiff's report of harassment and the termination of her employment. The close timing alone is sufficient to establish a *prima facie* case of causation. In sum, we conclude that plaintiff has established a *prima facie* case of retaliation based on defendant's termination of her employment.

The burden now shifts to defendant to state a "legitimate, non-discriminatory reason" for terminating plaintiff's employment.   Stegall, 350 F.3d at 1066 (citation omitted). Defendant has done so by alleging that it fired plaintiff for sexually harassing Urias and Ochoa.  Accordingly, plaintiff must present evidence to show that defendant's stated reason is pretext, either by showing that discrimination "more likely motivated" defendant, or by

1   showing that defendant's reason is unworthy of belief. Id.  In response, plaintiff argues that

2   her "alleged misconduct did not happen or was not misconduct." Response to MSJ at 4.  But

3   in assessing whether defendant's proffered justification for firing plaintiff is unworthy of

4   belief, it does not matter whether the justification was objectively false, but rather that "an

5   employer honestly believed its reason for its actions." Villiarimo, 281 F.3d at 1063 (citation

6   omitted) (plaintiff did not establish pretext in part because she "presented no evidence that

7   [defendant] did not honestly believe its proffered reasons" for firing her); see also Gil v.

8   JPMorgan Chase Bank, N.A., CIV-07-0181-PHX-SMM, 2009 WL 1628876, at *9 (D.Ariz.

9   June 10, 2009) ("The issue before this Court, however, is not whether [defendant]'s

10  conclusions were correct; instead, the issue is whether [defendant] conducted a thorough

11  investigation and whether they [sic] made credibility determinations reasonably and in good

12  faith.").

13       Here, although plaintiff disputes the accuracy of the allegations against her, she does

14  not dispute that Urias reported that she repeatedly rubbed up against him and forcibly kissed

15  him while rubbing against his groin.  She does not dispute that Ross reported that she

16  personally witnessed plaintiff grabbing Ochoa and making sexual comments about him.  She

17  does not dispute that Acosta reported witnessing her rub up against Urias by the water cooler.

18  Plaintiff does not dispute that more than fifteen people were interviewed during defendant's

19  investigation into the allegations of sexual harassment made against her.  And although

20  plaintiff now argues she did not mean to imply that she initiated or welcomed the kiss with

21  Urias, she testified that she told defendant the kiss was mutual.  Alves Dep. 88:2-7 (DSOF,

22  ex. 6).  Plaintiff alleges that there are instances involving other employees in which

23  defendant failed to address sexual harassment, but presents no evidence to suggest either that

24  defendant failed to conduct a thorough investigation into the allegations made against her,

25  or that defendant did not honestly believe that she had violated its sexual harassment policy.

26  Because plaintiff has not presented a triable issue of fact on whether defendant's termination

27  of her employment was pretext, her retaliation claim fails.

28  ///

1

**IV**

2          In order for plaintiff to prevail on her hostile work environment claim, she must show

3   that conduct was "sufficiently severe or pervasive to alter the conditions of the victim's

4   employment and create an abusive working environment." <u>Swenson</u>, 271 F.3d at 1191

5   (citation omitted).   The work environment must be both objectively and subjectively

6   perceived as abusive. <u>Brooks</u>, 229 F.3d at 923.  Because plaintiff has alleged harassment by

7   co-workers, defendant is only liable if its own negligence was a cause.  <u>Swenson</u>, 271 F.3d

8   at 1191.  An employer is liable for the sexual harassment of its employees if it "fails to take

9   corrective action after learning of an employee's sexually harassing conduct, or takes

10  inadequate action that emboldens the harasser to continue his misconduct." <u>Id.</u> at 1192

11  (citing <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 789, 118 S. Ct. 2275, 2284 (1998)).

12  An employer is not liable for harassment that it does not know exists. <u>Id.</u>  We look both to

13  the steps taken while the employer determines whether the complaint is accurate, and to the

14  remedial steps taken after an investigation is complete.  <u>Id.</u>

15         The parties vigorously dispute whether the conduct alleged by plaintiff was

16  subjectively and objectively offensive.  We need not answer those questions today, however,

17  because even if the work environment was sexually hostile, defendant is shielded from

18  liability as a matter of law, because the undisputed facts reveal that it performed an adequate

19  investigation and took appropriate remedial steps to end the harassment.   "The most

20  significant immediate measure an employer can take in response to a sexual harassment

21  complaint is to launch a prompt investigation to determine whether the complaint is

22  justified." <u>Id.</u> at 1193.  Here, it is undisputed that defendant initiated its investigation into

23  plaintiff's allegations of sexual harassment soon after plaintiff met with Assistant Warden

24  Pease and Sanchez on September 8, 2010.  Pease asked plaintiff to submit a written statement

25  that day.  Pease and Sanchez met with Acosta and Ochoa on September 10, 2010 to discuss

26  plaintiff's allegations, and defendant placed both Acosta and Ochoa on administrative leave

27  without pay that same day, with an instruction not to contact other staff.  Pease and Sanchez

28  met with Urias on September 14, 2010 to discuss plaintiff's allegations.  He was placed on

1   administrative leave without pay the next day, and was also instructed not to contact staff.

2   Defendant completed its investigation on September 21, 2010.   It terminated Ochoa's

3   employment after finding that he violated the sexual harassment policy.  It concluded that

4   Urias and Acosta violated company policies, suspended them without pay, and required them

5   to repeat sexual harassment training.

6          Plaintiff argues that defendant did not take prompt remedial action because it ignored

7   or minimized earlier complaints.  First, she alleges that she submitted a complaint to Hipolito

8   Reyes in August 2010 accusing Urias of kissing her that was "brushed off" by Duenas.

9   PSSOF ¶¶ 16, 19.  She testified, however, that when meeting with Duenas to discuss the

10  complaint, plaintiff was asked whether the kiss made her uncomfortable and responded that

11  she really didn't care about it.  PSSOF ¶ 19.  A reasonable jury could not conclude that

12  defendant ignored or minimized the complaint when it met with plaintiff to discuss her

13  complaint, but was told by plaintiff that she did not care about the kiss.  Next, plaintiff

14  alleges that she complained about misconduct by another employee, Lieutenant Kimball.

15  PSSOF ¶ 72.  Neither the statement of fact nor the evidence referenced, however, supports

16  plaintiff's argument that her complaint was minimized or ignored by defendant.   The

17  evidence referenced indicates that Kimball did not like that she complained, and retaliated

18  against her by glaring at her and accusing her of making mistakes.  She does not point to any

19  evidence showing that defendant ignored her initial complaint about Kimball, and does not

20  allege that she ever reported Kimball's retaliation after she complained.[8]

21          To the extent that plaintiff is trying to argue that defendant's response was insufficient

22  because it incorrectly concluded that plaintiff's allegations were unfounded, a wrong

23  conclusion alone will not subject defendant to liability.  An employer can act reasonably, "yet

24  reach a mistaken conclusion as to whether the accused employee actually committed

25  harassment."  Swenson, 271 F.3d at 1196.  As long as the employer acted reasonably, it

26

27          _____

28          [8] By contrast, defendant submitted evidence showing that defendant disciplined
    Kimball for harassing plaintiff by demoting him in May 2010.  Reply to MSJ, ex. B.

1    insulates itself from liability. Id. Here, it is undisputed that defendant fired Ochoa, required

2    Acosta and Urias to undergo additional sexual harassment training, and suspended Acosta

3    and Urias without pay.  And when plaintiff raised new allegations of harassment against

4    Acosta and Urias after her employment was terminated, it is undisputed that defendant

5    investigated those allegations, ultimately concluding that they were unfounded.  Even if

6    defendant was mistaken in concluding that Ochoa, Urias and Acosta did not engage in all of

7    the conduct alleged, it took reasonable steps by promptly launching an investigation,

8    interviewing witnesses, placing the alleged offenders on administrative leave pending the

9    investigation, and disciplining employees for improper conduct discovered during the

10   investigation. Cf. Fuller v. City of Oakland, 47 F.3d 1522, 1529 (9th Cir. 1995) (response

11   unreasonable when investigator made no attempt to corroborate harasser's denial of conduct

12   even after harasser admitted to lying, failed to interview witness favorable to plaintiff, and

13   warned harasser of claims in advance to allow him to prepare a defense).  The investigation

14   satisfies defendant's obligation to act reasonably, and insulates it from liability on the sexual

15   harassment claim.

16          Because summary judgment is granted on both counts, we do not reach defendant's

17   argument that plaintiff's damages are limited by the after-acquired evidence and superceding

18   cause doctrines.

19                                               **V**

20          We do not mean to suggest that the type of conduct alleged to have occurred at the

21   San Luis Detention Facility is an appropriate way to act in the workplace. To the contrary,

22   the alleged conduct is reprehensible.  Title VII, however, does not always impose liability

23   on an employer when its employees behave badly.  Because plaintiff has not presented

24   evidence that her termination of employment was pretext for retaliation and because the

25   undisputed evidence shows that defendant reasonably addressed plaintiff's allegations of

26   sexual harassment, defendant is entitled to judgment as a matter of law.

27   / / /

28   / / /

1      Accordingly, **IT IS ORDERED GRANTING** defendant's motion for summary

2  judgment (doc. 46).  **IT IS FURTHER ORDERED DENYING** plaintiff's motion to

3  supplement her response to the motion for summary judgment (doc. 59).  The Clerk shall

4  enter judgment.

5      DATED this 27th day of July, 2012.

6

7  _____

8                    Frederick J. Martone
                 United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28